## PERRY ET AL. v. FISHER.

### [No. 4,244.   Filed January 8, 1903.]

MORTGAGES. —*Default in Payment of Interest.*— *Foreclosure.*—A mortgage may be foreclosed on default of payment of annual interest without a provision in the mortgage to that effect.   *p. 262.*

SAME.—*Assignment.—Record.*—The mere assignment of a note, although it carries with it the mortgage, is not an assignment of the mortgage within the meaning of §1107a *et seq.* Burns 1901, which requires the assignment to be recorded within a certain time.   *pp. 262-267.*

From Jasper Circuit Court; *S. P. Thompson*, Judge.

Action by Franklin Fisher against John G. Perry and others to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*A. D. Babcock, Frank Foltz, C. G. Spitler* and *H. R. Kurrie*, for appellants.

*C. W. Hanley* and *J. J. Hunt*, for appellee.

ROBINSON, J.—This case was transferred from the Supreme Court under the provisions of the act in force March 12, 1901 (Acts 1901, p. 565). Through an arrangement among loan agents, the appellee, and his son, the father conveyed lands to the son to procure a loan, the son afterwards

to reconvey the land, or to sell it and turn over the proceeds to the father. The son sold the land to appellants, taking notes and mortgages payable to himself for the balance of the purchase money, and assigned the notes and mortgages to the father, who sues to recover overdue interest, and to foreclose. The notes are payable at a bank in this State and provide for "interest at the rate of five per cent. per annum, payable annually until paid, and attorney's fees." Each mortgage states it is given to secure the payment, when the same becomes due, of one note of even date herewith, given by the mortgagor to the mortgagee," for $1,083.33, "drawing interest at the rate of five per cent. per annum, payable annually;" that the same is unpaid purchase money, "and the mortgagor expressly agrees to pay the sum of money above secured without relief from valuation or appraisement laws."

The complaint avers that the annual instalment of interest falling due upon a named date is due and unpaid in a named sum. But it is argued that there is no condition in the mortgage authorizing a foreclosure on default of the payment of the annual interest. But this question has been expressly decided adversely to appellant. *Smart* v. *McKay,* 16 Ind. 45. The statute recognizes the right to foreclose for interest, in providing that "Whenever a complaint is filed for the foreclosure of a mortgage upon which there shall be due any interest, or instalment of the principal," etc. §1116 Burns 1901, §1102 Horner 1901. See *Miller* v. *Remley,* 35 Ind. 539; *Hunt* v. *Harding,* 11 Ind. 245.

The notes and mortgages are dated May 4, 1899, and the notes are payable five years after date. On the back of each of the notes is an assignment by the payee to appellee, but not dated. On the margin of the record of each mortgage is the following, signed by the mortgagee: "For value received, I hereby assign this mortgage, and the note secured thereby, to Franklin Fisher, without recourse on me, the said note having been assigned to the said Franklin Fisher

by indorsement and delivery on December 28, 1899. Done this 2d day of July, 1900."

It is argued that as the assignment of the notes carried with it the mortgages, the demurrer was erroneously sustained to appellant's sixth paragraph of answer, which pleaded a failure to comply with the statute (Acts 1899, p. 191, §1107a *et seq.* Burns 1901) requiring an assignment of a mortgage to be recorded within a certain time, and asked that he be allowed the deduction provided in §1107d Burns 1901. Section 1107a provides: "That it shall be the duty of each and every firm, person or corporation who transfers or assigns any mortgage upon real estate within the State of Indiana, securing the payment of any sum or sums of money, to sell, transfer or assign the same in writing either upon the margin of the record where such mortgage is recorded, or by written instrument, and cause the same to be duly acknowledged before some officer authorized to take acknowledgments of the execution of such mortgages." Section 1107b provides: "It shall be the duty of every person, firm or corporation receiving such assignment of any such mortgage when not so indorsed upon the margin of said record, where said mortgage is recorded, to cause the same to be recorded in the office of the recorder where said mortgage is recorded or is entitled to be recorded, within forty-five days from the date of receiving of such assignment." By §1107c it is provided that upon failure so to record such assignment, the person receiving the same shall forfeit to the State a sum equal to ten per cent. of the face value of the indebtedness so secured, such sum to be recovered in an action by the prosecuting attorney. And by §1107d, if the assignee sues to foreclose, and the assignment has not been recorded as above required, and no action has been brought for the recovery of the above penalty, the defendant may plead such failure to record the assignment, and be entitled to a deduction from such indebted-

ness of a sum equal to ten per cent. of the par value of the indebtedness, whether the action is brought in the name of the assignee or any other person.

It has long been a familiar proposition that the assignment of a note secured by a mortgage carries with it the mortgage, on the ground that the mortgage is a mere incident to the debt, and that the grant of the principal thing carries all the incidents. *Blair* v. *Bass,* 4 Blackf. 539; *Reeves* v. *Hayes,* 95 Ind. 521; *Connecticut, etc., Ins. Co.* v. *Talbot,* 113 Ind. 373, 3 Am. St. 655.

Prior to the act of 1877 (§1107 Burns 1901), there was no law in this State authorizing assignments of mortgages to be recorded *(Reeves* v. *Hayes, supra);* unless the assignee had an assignment duly acknowledged, in which case he could have the same recorded under the recording act. *Connecticut, etc., Ins. Co.* v. *Talbot, supra.*

The act of 1877 (§1107 Burns 1901) provides that "Any mortgage of record, or any part thereof, may be assigned by the mortgagee, or any assignee thereof, either by an assignment entered on the margin of such record, signed by the person making the assignment and attested by the recorder, or by a separate instrument executed and acknowledged," etc. It is also provided that the assignment, if by a separate instrument, may be recorded on the margin of the recorded mortgage, or in the mortgage records, and that such entry will bind the mortgagor and all other persons after the same is made.

The record of a mortgage is itself sufficient notice of its existence to subsequent purchasers of the premises, or holders of subsequent mortgages, or judgment creditors, without the record of an assignment of the mortgage to one who has purchased it. The record is constructive notice of the existence of a mortgage, and such purchasers and holders of subsequent mortgages and creditors must know it is a lien in the hands of any one to whom it may have been legally transferred; that is, the record of an assignment is not

necessary to the validity of the mortgage, but is simply a protection to a good-faith purchaser of the mortgage itself, or the bond or debt which it secures. The effect, then, of recording an assignment is to protect the assignee against a wrongful sale by the apparent holder, and against a wrongful discharge of the mortgage by the mortgagee. Jones, Mortgages, §473 *et seq.*

If the effect of recording an assignment of a mortgage is thus limited, and we think it must be, the conclusion would seem to follow either that the act of 1899 has added nothing to the law as it already existed for the protection of an assignee, or that it has made that which was optional with an assignee obligatory upon him. For it must be conceded that the act of 1877 (§1107 Burns 1901) makes complete provision for the protection of an assignee through the recording act. With that act alone in force an assignee of a mortgage was given an opportunity fully to protect himself. He could avail himself of this protection or not as he might choose. But under the act of 1899 the assignment of the mortgage must be in writing, and it must be made either upon the margin of the recorded mortgage, or by a separate instrument duly acknowledged and recorded within a certain time.

In the case at bar the assignment of the mortgage was made upon the margin of the record of the mortgage on July 2, 1900, and the assignment recites that the note secured by the mortgage was assigned by indorsement and delivery during the previous December. But the assignment of the note, while it did carry with it the mortgage, was not an assignment of the mortgage within the meaning of this act. There was no assignment of the mortgage, as this act requires, until July 2, 1900, when the assignment was made on the margin of the record; that is, the assignment of the mortgage was the recording of the assignment itself. The statute plainly directs that any person assigning a mortgage shall assign it in writing, in one of two ways. The statute

is penal in its nature, and the words employed must be understood in the sense in which the legislature obviously used them.

It is suggested in argument that the purpose of the act of 1899 was to enable the taxing officers properly to assess the mortgage debt. We can not say that this was the sole purpose of the legislature, as there is nothing in the language used which authorizes us so to limit its purpose. Under the construction we have given the statute, a mortgagor, relying upon the record of the mortgage, might acquire certain rights against the mortgagee prior to the recorded assignment. But it is unnecessary to inquire into this in this suit, as the case, upon the pleadings and the evidence, was tried upon the theory that any set-off appellant held against the payee named in the notes prior to the date of the assignment of the mortgages and the notes might be shown. As to these set-offs there was a direct conflict in the evidence. As appellant was permitted to defend as though the notes in fact belonged to the son prior to the recorded assignment of the mortgages and notes, it is not clear that a different result would be reached upon another trial.

Moreover, it appears from the evidence that the father was in fact the owner of the land when sold, and the owner of the notes and mortgages when they were executed. There was a prior loan on the land which appellee desired to renew or continue, but, for certain reasons, was unable to do so. It was then agreed that the land should be conveyed to the son to procure the loan; also to sell the land and assign the proceeds to the father; and if no sale was made the land was to be deeded back. The son procured the loan, and sold the land to appellant who executed the notes and mortgages in question.

There is evidence from which the trial court could conclude that appellant had notice of all the circumstances connected with the transaction between the son and the father at the time he purchased the land from the son. From a

careful consideration of the whole record it appears the case was fairly tried, and a correct conclusion reached. Judgment affirmed.